UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| AMY L. INGENHUTT and TERESA L. ODELL, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 15-1303 |
| STATE FARM INVESTMENT MANAGEMENT CORPORATION, | ) ) ) ) |
| Defendant. | ) |

## **O R D E R**

This matter is before the Court on Defendant's Motion to Dismiss.  For the reasons set forth below, the Motion to Dismiss [23] is GRANTED.

**BACKGROUND**

This action is for breach of fiduciary duty under Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b) (the "ICA").  Defendant, State Farm Investment Management Corporation ("SFIMC") is the investment adviser for a group of target date mutual funds, known as the "LifePath Funds" (the "Funds").  Target date mutual funds are designed to provide a certain level of risk/return based on the date on which the investments in the fund are expected to be needed for retirement.  As the target date approaches, the investments should adjust to become more conservative over time.  Plaintiffs Amy Ingenhutt ("Ingenhutt") and Teresa Odell ("Odell") bring this action derivatively on behalf of the Funds in which they have

invested,[1] alleging that SFIMC breached its fiduciary duties to the Funds by collecting excessive management fees. As a result, the Funds and the holders of shares in the Funds have suffered losses.

The Funds do not invest directly in stocks, bonds, or money market funds. Instead, each of the Funds is a feeder into a "master-feeder" arrangement, investing all of its assets in a corresponding separate portfolio called a Master Portfolio. Each Master Portfolio is itself one of a series of funds contained within an unaffiliated fund known as the Master Investment Portfolio known as the Master Fund. The Master Fund then invests in a combination or subset of approximately 12 underlying funds. The Master Fund and each of the Master Portfolios were sponsored or launched by BlackRock, Inc., and are managed by Black Rock Fund Advisors ("BFA"), a private investment management company unaffiliated with SFIMC. Thus, BFA is the investment adviser for each of the Master Portfolios, as well as the underlying funds in the Master Fund in which the Master Portfolios invest. SFMIC relies on BFA to provide portfolio allocations among the asset classes offered through the underlying funds in managing the Funds.

The fees paid by the Funds include management fees, distribution and/or service fees and other expenses and fees, including administrative fees. Only the management fees received by SFIMC are at issue here. These management fees are for the purpose of compensating SFIMN for its services as the manager or investment advisor to the Funds and are paid as a percentage of the assets under management. As of 2015, the management fees for the Funds ranged from 102 basis points[2] (1.02%) to 110 basis points (1.1%). The management fees paid by the Funds are

---

[1] Ingenhutt is a shareholder in the LifePath 2050 Funds, while Odell is a shareholder in the LifePath 2030 Funds.

[2] For purposes of this Order, a basis point equals .01%.

alleged to include the management fees charged by SFIMC for services provided to the Funds, the fees charged by BFA for its services in managing the underlying funds, and the fees charged by BFA for its services in managing the Master Portfolios.  However, due to its status as advisor at both the Master Portfolio and underlying funds levels, BFA has contractually agreed to waive its management fees at the Master Portfolio level in an amount equal to the management fees and administrative fees its affiliate receives from each investment company in which the Master Portfolios invest.  SFIMC has also contractually agreed to waive its management fees in an amount required to keep the Fund's Total Annual Operating Expenses at or below a specified amount for each share class.  As reported in the 2015 Prospectus, the fee waivers for the Funds ranged from 41 basis points (.41%) to 48 basis points (.48%), causing the net management fee for each fund to be consistently 62 or 63 basis points (.62% or .63%).

In layman's terms, this arrangement translated into management fees ranging from $1,361,772 to $11, 738,532 among the five Funds and totaling $39,232,034 in 2014.  The total fees were then apportioned between SFIMC and BFA, with SFIMC receiving $17,495,659 (or 28 basis points) and BFA receiving $21,736,375 (or 34 basis points).  According to Plaintiffs, the net management fee in excess of $17,000,000 that SFIMC receives is approximately 44% of the total fee even though BFA provides virtually all of the investment advisory and portfolio management services.  Thus, they maintain that the fees retained by SFIMC are so disproportionately large that they bear no reasonable relationship to the services rendered in exchange for those fees, and could not have been negotiated through arms length bargaining.

Plaintiffs brought this action under the ICA claiming excessive or unfair fees under Section 36(b) of the Act. Defendant has moved to dismiss the Amended Complaint. The matter is fully briefed, and this Order follows.

## LEGAL STANDARD

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41 (1957); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Furthermore, the claim for relief must be "plausible on its face." *Id.*; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. V. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

## ANALYSIS

Defendant seeks dismissal of the Amended Complaint on the grounds that Plaintiffs have failed to state a claim for breach of fiduciary duty. Section 36(b) of the ICA imposes a fiduciary on the investment managers of mutual funds with respect to their receipt of compensation for services:

> [T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection . . . by a security holder of such registered investment company on behalf of such company, against such investment advisers, or an affiliated person of such investment adviser . . . for breach of fiduciary duty in respect to such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

15 U.S.C. § 80a-35(b).

To state a claim under § 36(b), Plaintiffs must plausibly allege that the investment advisor charged a fee that "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones v. Harris Associates L.P.*, 559 U.S. 335, 346 (2010). The Court's function is to "identify the outer bounds of arm's length bargaining." *Jones v. Harris Associates L.P*, 611 Fed.Appx. 359, 360 (7th Cir. 2015) ("*Jones II*").

SFIMC relies on *Jones* for the argument that Plaintiffs have failed to plead sufficient facts in support of their claim, relying instead on insufficient conclusory allegations. However, *Jones* was decided on a fully developed factual record on summary judgment, not a motion to dismiss prior to discovery. In the wake of *Twombly* and *Iqbal*, to survive a motion to dismiss, a plaintiff must provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008); *Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

The Amended Complaint alleges that the Funds do not invest directly, but rather are structured as "feeder" funds in a "master-feeder" arrangement investing in a master portfolio. The master portfolio is then located within a master investment portfolio. The master portfolios, the master investment portfolio, and the underlying funds in which the portfolios invest are all managed by BFA. The fees charged are a combination of BFA's fees for investment advisory and management services to the underlying funds and the master portfolio, as well as the management fees charged by SFIMC.

The section of the Amended Complaint titled "Facts Establishing that SFIMC's Management Fees are Excessive" begins with formulaic recitation of the legal standard and factors to be considered. From there, Plaintiffs go on to artfully craft "facts" that are in reality speculative assertions.

The Amended Complaint states that SFIMC retained a net management fee in excess of $17,000,000 in 2014. It goes on to list the management services provided by SFIMC as described in the Fund materials and baldly assert that they are on their face limited in scope and ministerial. It is claimed that the actual investment services are delegated to and performed by BFA, which Plaintiffs suggest, without factual support, are more costly to provide and provide the real value to investors. The Amended Complaint further maintains that SFIMC does not provide any day-to-day investment services, investment guidance, or policy direction, but nevertheless receives almost as much in fees as BFA under the current arrangement. According to Plaintiffs, again without citation to any factual or legal authority, the identified administrative management services provided by SFIMC do not begin to justify the share of management fees that it collects from the Funds' shareholders.

Plaintiffs purport to compare fees charged by other mutual funds. SFIMC argues that Plaintiffs fail to fully articulate the nature of the purportedly comparable fees charged by the other funds, acknowledging only a small component of the total fee while ignoring the remainder of the components or actually pointing to facts indicating that the funds are truly comparable. Addressing this argument requires consideration of matters outside the pleadings, which is not normally appropriate on a motion to dismiss. However, the information necessary is available in publicly filed documents, of which the Court has taken judicial notice.

Comparison is made to the disclosed management fees reportedly charged by eight comparable target date funds, charging from 0 to 10 bps, whereas the fee collected by SFIMC is approximately 28 bps. While this comparison initially appears to provide some factual support for the Amended Complaint, a review of the judicially noticed materials from the public record reveals that Plaintiffs have not presented a sufficient foundation to find that they are similar enough to be comparable. *See Turner v. Davis Selected Advisers, LP*, 2015 WL 5692324, at *1-2 (9th Cir. Sept. 2015). Nor is there any effort to compare the services being provided by SFIMC to those being provided by the chosen comparators.

The increase in the amount of fees paid by shareholders over time has allegedly increased without any indication of how costs incurred in managing the Funds have increased to the same degree. Plaintiffs contend that economies of scale should logically result in savings as the Funds' assets increase, yet the fees appear to have increased in tandem with the assets. Again, there are no facts supporting these bare observations, and there is no attempt to address any corresponding change in expenses. Plaintiffs' summarily allege that some of the services listed in the materials as being provided by SFIMC are actually responsibilities of the Board of Trustees or are delegated to BFA

and are therefore duplicative charges. Yet again, without an adequate foundation or factual support, Plaintiffs' summary allegations are inapposite.

On the procedural side of the equation, Plaintiffs contend that SFIMC does not provide the trustees with sufficient information for them to fulfill their obligations in reviewing and approving the advisory agreement. The Funds' Semi-Annual Reports to the SEC include only a general description of the trustees' review process and materials provided, and the materials provided are purportedly not available to shareholders. From these materials, Plaintiffs infer that the trustees are only provided the overall expense ratio of the funds for consideration rather than examining the portion of the fees that SFIMC receives relative to the services that it actually provides. With all due respect, this inference standing alone requires more conjecture than is permissible under *Twombly* and *Iqbal*.

Based on the largely unsupported allegations of the Amended Complaint, Plaintiffs have not demonstrated some connection between the services provided and fees charged that could establish fees charged beyond the outer bounds of arm's length bargaining that is plausible rather than merely possible. The minimal factual allegations (as opposed to the many conclusory assertions), even if taken as true, would not state a claim that the fees at issue are successive, as they do not set forth factual allegations calling into question whether the fees charged by SFIMC are beyond the range of what could have been bargained at arms-length.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss by Defendants [23] is GRANTED. Plaintiffs will be afforded 14 days in which to cure the identified deficiencies by filing a second

amended complaint, if they have a good faith basis for doing so.

ENTERED this 22nd day of June, 2016.

s/ James E. Shadid  
James E. Shadid  
United States District Judge