IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| AMY L. INGENHUTT and TERESA L. ODELL,<br>    Plaintiffs,<br><br>v.<br><br>STATE FARM INVESTMENT MANAGEMENT CORPORATION,<br>    Defendant. | Case No. 1:15-cv-01303-JES-JEH |

## ORDER AND OPINION

This matter is before the Court on the Defendant's Motion to Dismiss (Doc. 37) and Motion to Strike Declaration of Steve Pomerantz, Ph.D. (Doc. 39). For the reasons set forth below, the Motion to Dismiss (Doc. 37) and Motion to Strike (Doc. 39) are DENIED.

## BACKGROUND

This action is for breach of fiduciary duty under Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b) (the "ICA"). Defendant, State Farm Investment Management Corporation ("SFIMC") is the investment adviser for a group of target date mutual funds, known as the "LifePath Funds" (the "Funds"). Target date mutual funds are designed to provide a certain level of risk/return based on the date the investments are expected to be needed for retirement. As the target date approaches, the investments should adjust to become more conservative over time. Plaintiffs Amy Ingenhutt and Teresa Odell bring this action derivatively

on behalf of the Funds in which they have invested,[1] alleging that SFIMC breached its fiduciary duties to the Funds by collecting excessive management fees. As a result, the Funds and the shareholders in the Funds have suffered losses.

The following facts are taken from the Plaintiff's Second Amended Complaint and the briefs. The Funds do not invest directly in stocks, bonds, or money market funds. Instead, each of the Funds is a feeder into a "master-feeder" arrangement, investing all of its assets in a corresponding separate portfolio called a Master Portfolio. Each Master Portfolio is itself one of a series of funds contained within an unaffiliated fund known as the Master Investment Portfolio or Master Fund. The Master Fund then invests in a combination or subset of approximately 12 underlying funds. The Master Fund and each of the Master Portfolios were sponsored or launched by BlackRock, Inc., and are managed by Black Rock Fund Advisors ("BFA"), a private investment management company unaffiliated with SFIMC. Thus, BFA is the investment adviser for each of the Master Portfolios, as well as the underlying funds in the Master Fund in which the Master Portfolios invest. SFIMC relies on BFA to provide portfolio allocations among the asset classes offered through the underlying funds in managing the Funds.

The fees paid by the Funds include management fees, distribution and/or service fees and other expenses and fees, including administrative fees. Only the management fees received by SFIMC are at issue here. These management fees are for the purpose of compensating SFIMC for its services as the manager or investment advisor to the Funds and are paid as a percentage of the assets under management. As of 2015, the management fees for the Funds ranged from 102

---

[1] Ingenhutt is a shareholder in the LifePath 2050 Funds, while Odell is a shareholder in the LifePath 2030 Funds.

basis points[2] (1.02%) to 110 basis points (1.1%). The management fees paid by the Funds are alleged to include the management fees charged by SFIMC for services provided to the Funds, the fees charged by BFA for its services in managing the underlying funds, and the fees charged by BFA for its services in managing the Master Portfolios. However, due to its status as advisor at both the Master Portfolio and underlying funds levels, BFA has contractually agreed to waive its management fees at the Master Portfolio level in an amount equal to the management fees and administrative fees its affiliate receives from each investment company in which the Master Portfolios invest. SFIMC has also contractually agreed to waive its management fees in an amount required to keep the Fund's Total Annual Operating Expenses at or below a specified amount for each share class. As reported in the 2015 Prospectus, the fee waivers for the Funds ranged from 41 basis points (.41%) to 48 basis points (.48%), causing the net management fee for each fund to be consistently 62 or 63 basis points (.62% or .63%).

In layman's terms, this arrangement translated into management fees ranging from $1,361,772 to $11,738,532 among the five Funds and totaling $39,232,034 in 2014.[3] The total fees were then apportioned between SFIMC and BFA, with SFIMC receiving $17,495,659 (or 28 basis points) and BFA receiving $21,736,375 (or 34 basis points). According to Plaintiffs, the net management fee in excess of $17,000,000 that SFIMC receives is approximately 44% of the total fee even though BFA provides virtually all of the investment advisory and portfolio management services. Thus, they maintain that the fees retained by SFIMC are so

---

[2] For purposes of this Order, a basis point equals .01%.

[3] The funds at issue are two of the five "LifePath" funds.

disproportionately large that they bear no reasonable relationship to the services rendered in exchange for those fees, and could not have been negotiated through arm's-length bargaining.

## PROCEDURAL HISTORY

Plaintiffs brought this action under the ICA claiming excessive or unfair fees under § 36(b) of the Act. 15 U.S.C. § 80a-35(b). On June 22, 2016, the Court granted the Defendant's Motion to Dismiss. (Doc. 34). The Plaintiffs subsequently filed a Second Amended Complaint ("SAC"). (Doc. 35). The Defendant now moves to dismiss the Plaintiffs' SAC. (Doc. 37, 38). The Defendant also filed a Motion to Strike the Declaration of Steve Pomerantz, Ph.D. (Doc. 39). The matter is fully briefed, and this Order follows.

## LEGAL STANDARD

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41 (1957); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Furthermore, the claim for relief must be "plausible on its face." *Id.*; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009). For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East*

*Hazel Crest*, 110 F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

## ANALYSIS

Defendant seeks dismissal of the Amended Complaint on the grounds that Plaintiffs have failed to state a claim for breach of fiduciary duty. Section 36(b) of the ICA imposes a fiduciary on the investment managers of mutual funds with respect to their receipt of compensation for services:

> [T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection . . . by a security holder of such registered investment company on behalf of such company, against such investment advisers, or an affiliated person of such investment adviser . . . for breach of fiduciary duty in respect to such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

15 U.S.C. § 80a-35(b).

To state a claim under § 36(b), Plaintiffs must plausibly allege that the investment advisor charged a fee that "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones v. Harris Associates L.P.*, 559 U.S. 335, 346 (2010). The court's function is to use "the range of fees that might result from arm's-length bargaining as the benchmark for reviewing challenged fees" and "identify the outer bounds of arm's length bargaining." *Id.*; *Jones v. Harris Associates L.P.*, 611 Fed.Appx. 359, 360 (7th Cir. 2015) ("*Jones II*"). In applying the *Jones* standard, courts employ the *Gartenberg* test, which takes into account "all relevant circumstances." *Jones*, 559

5

U.S. at 1420 (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982)). These factors include:

> (1) The nature and quality of the services provided to the fund and shareholders;
> (2) The profitability of the fund to the adviser;
> (3) Any "fall-out financial benefits," those collateral benefits that accrue to the adviser because of its relationship with the mutual fund;
> (4) Comparative fee structure (meaning a comparison of the fees with those paid by similar funds); and
> (5) The independence, expertise, care and conscientiousness of the board in evaluating adviser compensation.

*Jones*, 559 U.S. at 1426, n.5 (citing *Gartenberg*, 694 F.2d at 929-932).

The Defendant argues that the Court should dismiss the Second Amended Complaint because the Plaintiffs once again fail to state a plausible claim for excessive fees under § 36(b) of the ICA. In particular, they argue that the Plaintiffs fail to establish a basis for comparability to other mutual funds and to define a relevant bargaining range to establish excessive fees. The Defendants also argue that the Plaintiffs make baseless assertions that SFIMC provides only minimal services. According to the Defendant, the Plaintiffs also fail to provide necessary facts to support the other *Gartenberg* factors—economies of scale, profitability, and independence and conscientiousness of the board.

Finally, the Defendant argues that because the Plaintiffs fail to state a plausible claim under § 36(b), they are not entitled to rescission under § 47(b), nor can they ask for a jury trial when § 36(b) is an equitable claim. The Defendant separately moves to strike the declaration of Steve Pomerantz, Ph.D. (Doc. 43), which the Plaintiffs cite in support of their allegations. The Court will address each of the Defendant's arguments in turn.

I. **Motion to Strike the Pomerantz Declaration**

As an initial matter, the Court will address the Declaration of Dr. Pomerantz, and specifically the Defendant's Motion to Strike the Declaration. The Plaintiffs incorporated the

Declaration of Steve Pomerantz, Ph.D. in their Second Amended Complaint, in hopes to support their factual allegations and survive another Motion to Dismiss. The Defendant makes a number of arguments in the Motion to Dismiss that pertain to Pomerantz. Accordingly, the Court will address the Declaration before reaching the § 36(b) analysis.

Dr. Pomerantz is an "investment management consultant" retained by the Plaintiffs, who provides an opinion on portions of the relationship between SFIMC and the Funds. The Defendant, however, argues that the Pomerantz Declaration is devoid of facts and contains legal opinions that should be reserved for the Court to determine.

The Defendant also argues that the Court should strike all opinions and conclusions stated in the Declaration, particularly his legal opinion the SFIMC's compensation is disproportionate to the services rendered and not negotiated through arms-length bargaining. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). This includes his interpretation of the underlying service contracts, the SFIMC Advisory Agreement and the BFA Advisory Agreement. (Doc. 39, p. 6, citing *Delta Mining Corp. v. Big Rivers Elec. Corp.*, 18 F.3d 1398, 1402 (7th Cir. 1994)). Questioning his background in the industry, the Defendant also contends that Pomerantz lacks knowledge and makes speculative assumptions. Finally, the Defendant argues that the Declaration is not properly part of the SAC because it is not a written instrument pursuant to Rule 10(c) nor does it not satisfy Fed. R. Civ. P. 702, concerning testimony by expert witnesses.

In their Opposition to the Motion to Strike, the Plaintiffs argue that the Defendant is improperly imposing *Daubert*-like barriers to Pomerantz at the pleading stage. Instead, the Plaintiff describes Pomerantz's experience in support of his ability to give his opinion and frame the facts of the case. Additionally, the Plaintiff argues that the Pomerantz Declaration contains

assertions of fact, and these are expressly incorporated by reference into the SAC. His statements are based upon publicly available information as the basis of the facts he presents about the costs of the services, not contract interpretation, as the Defendant argues.

These claims in the SAC are supported by reference to the Pomerantz Declaration. (Doc. 35-1). The Plaintiffs respond that their factual allegations support their claim that SFIMC's services differ from investment advisory services and perform business-management services that are mostly ministerial in nature. For instance, Pomerantz opines that the non-asset management services provided by SFIMC are not identified and considered a part of the administrative service, and therefore the services provided by investment advisors are insignificant. (Doc. 35-1, ¶¶12, 21). Additionally, the SAC states that the services provided are independent of the size of the underlying fund and are fixed costs, citing to Pomerantz. *Id.* at ¶17. The Plaintiffs argue that they cannot be required to plead information they could only obtain through discovery, citing *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 529 (7th Cir. 2015) (citing *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010)) (a plaintiff need not "plead information she could not access without discovery"). Instead, they contend that the Declaration is properly incorporated to support their assertions.

The purpose of a 12(b)(6) motion to dismiss is "to test the legal sufficiency of a complaint, not the merits of the case." *Blau v. Harrison*, 2006 WL 850959, at *4 (N.D. Ill. Mar. 24, 2006). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Courts must be careful to avoid turning a 12(b)(6) motion into a Rule 56 motion for summary judgment, and accordingly must exclude matters outside the pleadings from its consideration of

whether the Plaintiff has stated a claim. The Court should consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents attached to the pleading. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998). The court should not accept every word in an attached written instrument as true without regard to the intent of the party attaching the exhibit. *Id.*

Rule 10(c) provides that "[a] copy of any written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). This does not mean that a document attached to a complaint is automatically admissible in trial for any purpose. *American Skandia Life Assur. Corp. v. McCarty*, 2008 WL 3009850, *2 (C.D. Ill. August 1, 2008). An affidavit attached to a complaint constitutes a written instrument under Rule 10(c). *Warrentech Auto., Inc. v. Heritage Warranty Ins. Risk Retention Grp., Inc.*, 2008 WL 4876936, at *8 (N.D. Ill. Aug. 12, 2008), citing *Northern Ind. Gun,* 163 F.3d at 453 n. 4 (7th Cir.1998); *Schnell v. City of Chi.*, 407 F.2d 1084, 1085 (7th Cir.1969). See *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 453, n.4 (7th Cir. 1998) ("[T]he broader interpretation comports with the traditionally generous nature in which we view pleadings."). A fact affidavit, therefore, is a "written instrument" within the meaning of Rule 10(c).

Accordingly, the Court holds that Dr. Pomerantz's Declaration qualifies as a "written instrument" within the meaning of Rule 10(c), and therefore the Defendant's Motion to Strike the Pomerantz Declaration is DENIED. The Plaintiffs' intent for including the Declaration was to address the Court's concerns in its previous Order dismissing the FAC, and to cite general industry knowledge about the bargaining range.

The Court has considered the statements incorporated within specific paragraphs in the SAC to determine whether the Plaintiffs have met the pleading standard. This does not guarantee

that the Declaration attached to the SAC will be admissible at trial, *American Skandia Life Assur. Corp. v. McCarty*, 2008 WL 3009850, *2 (C.D. Ill. Aug. 1, 2008); rather, at this juncture the Court only considers whether the allegations in the Complaint are sufficient to survive a motion to dismiss. Thus, the Court does not yet need to determine whether Pomerantz is a qualified expert or if his opinions will be admissible. Consequently, the Court will not strike the portions of the SAC that were derived from the non-conclusory and non-speculative statements in the Declaration. It appears that the Plaintiffs have revealed one expert ahead of discovery. Later in the proceedings, the Defendant may wish to bring an objection to Pomerantz as an expert, and the Court will then consider arguments about the expert's qualifications and credibility. Such arguments are more adequately addressed at the summary judgment stage rather than the pleading stage.

## II. Judicial Notice of Documents

The Defendant requests the Court to take judicial notice of the documents attached to the Declaration of Robert A. Skinner in support of the Motion to Dismiss pursuant to Fed. R. Evid. 201. (Doc. 37-1). According to the Defendant, the exhibits in question are incorporated by reference into the SAC and are therefore properly considered in their entirety. The Defendant argues that these documents are subject to judicial notice because they are directly referenced in the SAC and are public records whose authenticity is not in dispute. The Plaintiffs object, and argue that these documents are generally improper on a Rule 12(b)(6) motion and even the documents that fall within the exception of documents which can be considered on a motion to dismiss may not be judicially noticed for the truth of their statements. The Plaintiffs also argue that the documents are not central to their claims.

When ruling on a motion to dismiss, courts may properly consider documents attached to the motion to dismiss or a response. *Metz v. Joe Rizza Imports, Inc.*, 700 F.Supp.2d 983 (N.D. Ill. 2010). These documents are part of the pleadings if they are referred to in the complaint and central to the plaintiff's claim. *Solis v. Caro, N.C.*, No. 11 C 6884, 2012 WL 1409558, at *3 (N.D. Ill. Apr. 23, 2012). A court may also take judicial notice of a matter of public record, which also fall into this exception. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). Pursuant to Fed. R. Evid. 201, the Court can make judicial notice of a fact that is not subject to reasonable dispute because it is generally known or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). See also, *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper."). A court may take judicial notice of SEC filings "for the purpose of showing what statements the documents contain, but not for the proof of the facts stated therein." *George v. Kraft Foods Global, Inc.*, 674 F.Supp.2d 1031, 1044 (N.D. Ill. 2009) (quoting *Riggs Partners, LLC v. Hub Group*, 2002 WL 31415721, at *1 (N.D. Ill. Oct. 25, 2002)).

It is not necessary for the Court to judicially notice these documents for the purposes of the Motion to Dismiss. The Court may consider documents incorporated in and referenced by the pleadings. However, because the documents contain facts the Plaintiffs claim are subject to reasonable dispute, the Court refrains from taking judicial notice. The parties will have an opportunity to discuss or dispute the significance of the contents of these documents at later

stages of the litigation, including summary judgement. Next, the Court will address the § 36(b) claims as alleged in the SAC.

### III.     Section 36(b) Claims

The Defendant argues that the Plaintiffs fail to establish a basis for comparability to other mutual funds and to define a relevant bargaining range to establish excessive fees, and make baseless assertions that SFIMC provides only minimal services. The Defendant avers that this is insufficient to show the challenged fees are beyond the range of arm's-length bargaining. The Defendant further argues that the Plaintiffs fail to provide necessary facts to support the other *Gartenberg* factors: economies of scale, profitability, and independence and conscientiousness of the board.

First, the Defendant argues that the Plaintiffs fail to specify how the Comparators are similar to the Funds in regards to services or costs, and rely on their retained expert, Pomerantz. Therefore, the Defendant argues that the Plaintiffs have failed to identify the bounds of arm's-length bargaining. See *Jones*, 611 F. App'x at 360. Mainly, the Defendant argues that the Plaintiffs improperly compare the Funds to the other purported comparators because they are too dissimilar for an apt comparison, and the comparative fees presented in the SAC are misleading because they omit acquired funds fees.

The SAC alleges that SFIMC does not provide active or passive investment management services. The Plaintiff responds that SFIMC is incorrect, because the management fees in the comparisons should not be combined with acquired fund fees and expenses/fees received by BFA. The Plaintiffs acknowledge that the Funds' master-feeder arrangement differs from the "fund of funds" comparators, the latter of which perform more services. The Plaintiffs argue that SFIMC does not manage underlying funds; the acquired fund fees and expenses amount includes

12

costs paid to an investment adviser for managing underlying funds. Because SFIMC does not manage underlying funds, the Plaintiffs argue, the combined fees comparison is inaccurate. (Doc. 38, p. 5-6).

In *Jones*, the Supreme Court cautioned that courts should be wary of "inapt comparisons" where "services rendered are sufficiently different." *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 350 (2010). Such a comparison is not probative. *Id.* The Court previously found that the Plaintiffs did not present a sufficient foundation to find that these Comparators are similar enough or provide similar services. In the SAC, the Plaintiffs cure this deficiency. They assert that mutual fund complexes provide similar services and cost a fraction of what SFIMC charges. (Doc. 35, ¶ 59-60). "Accordingly, the management fee collected by the adviser directly from the target date fund is in exchange for precisely the same types of management services as SFIMC provides to the LifePath Funds . . . ." *Id.* at ¶ 62. The facts presented in the SAC, if true, show that the services rendered are not sufficiently different. Thus, the Court finds that the Plaintiffs have adequately stated which fees are compared and why the fees paid to comparators are not inapt comparisons. *Id.* at ¶¶ 62-63. An inference can be made from the facts pleaded in the SAC that the fees paid to SFIMC do not fall within the arm's-length bargaining range when considering the fees charged by comparators.

Second, the Defendant argues that the Plaintiffs make baseless allegations that SFIMC provides minimal services to establish the fees are beyond the range of arm's-length bargaining. The Plaintiffs describe the services as limited in scope and ministerial. *Id.* at ¶¶ 49, 50, 58. The Plaintiffs make an attempt to provide factual support by listing the same facts they stated in the FAC and rearranging them in the SAC. See Doc. 19, ¶¶ 51, 75 and Doc. 35, ¶ 55. However, the Plaintiffs also provide additional facts that lay a foundation to their claim that SFIMC's services

13

are not extraordinary and SFIMC's business needs are not more substantial or costly for the Trust here than for other trusts. (Doc. 35, ¶ 56, 58). These facts have been added at behest of the Court's last Order, which pointed out the dearth of factual support and citations to factual or legal authority in the FAC. (Doc. 34, p. 6-7). Specifically, the Court found that the Plaintiffs failed to adequately support their claim that the actual investment services were delegated to and performed by BFA, and cost much more than the services performed by SFIMC. Here, the Plaintiffs, albeit minimally, add citations to Pomerantz in order to further contrast the fees and services of other mutual funds with those of the Funds. (Doc. 35, ¶¶ 56-58).

The Court notes that the primary difference between these allegations in the FAC and SAC is that the latter cites to the Pomerantz Declaration for factual support. The Defendant argues that this is improper. However, without restating the Court's analysis above, the citations to Pomerantz are not improper as they are incorporated into the SAC. The elaborations of the duties that SFIMC and BFA perform, combined with the specific allegations that other mutual funds provide similar services for much lower fees, are enough to allow an inference that the fees are outside of the arm's-length bargaining range.

The Defendant argues that Pomerantz's statement that all mutual fund advisers necessarily provide the same or similar services "says nothing about the worth or cost of those services." (Doc. 38, p. 22; Doc. 35-1, ¶ 15).[4] The Plaintiffs, however, respond that the

---

[4] The Defendants argue that Pomerantz's statement that BFA performs more or all of the investment advisory services is improper because it is interpreting a contract. The Plaintiffs respond that Pomerantz is not interpreting a contract but rather states what services the adviser actually performs. The Court finds that as stated in the SAC, the Plaintiffs merely cite Pomerantz to lend support to the claim that SFIMC performs the same services that other mutual fund advisers perform but receives significantly higher compensation, although these services are less costly. Doc. 35-1, ¶15. Thus, the Plaintiffs do not rely on his legal interpretation in the SAC, nor does it appear here that he is giving a legal opinion. Rather, Plaintiffs appear to be relying on his industry knowledge.

Agreement between SFIMC and State Farm Mutual Fund Trust (Doc. 37-21, p. 3-6) ("Trust Agreement") differentiates between Management Services provided by SFIMC and Investment Management Services performed by BFA. Further, they argue that the master-feeder fund arrangement and comparison between the subadvisory agreement and Trust Agreement supports this assertion. The Court finds that the insufficiencies in the FAC regarding this factor have been sufficiently addressed in the SAC. The facts as stated support a claim for a breach of fiduciary duty; that is, SFIMC charges disproportionately higher fees for the same or similar services offered by comparator funds, some of which provide more services than SFIMC, particularly funds that provide more services.

      The Defendant argues that the services described by the Plaintiffs are extensive and are not ministerial and are misnamed business services. There is, however, no way for the Court to determine the exact nature of these services or reach the merits of the case prior to discovery. It may be that at after discovery, SFIMC's duties may be actually quite extensive. However, at the motion to dismiss stage, the Court determines whether or not a Plaintiffs have stated a claim. Further, the parties argue over what the public documents state and whether or not these documents contradict allegations in the SAC. However, "simply presenting the Court with an alternative version of events does not establish that [the plaintiff] has failed to state a claim." *Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 906 (N.D. Ill. 2016). As alleged, the Plaintiffs have stated a plausible claim sufficient to survive the Motion to Dismiss.

      Next, the Defendant argues that the Plaintiffs fail to allege that there were cost savings as the assets increased and these assets were not shared with shareholders—the economies of scale factor. The Defendant argues that the increase does not establish that the benefits from the

economies of scale were not passed along to the investors. In general, the Plaintiffs argue that the fees should not have simultaneously increased with the increase in the size of the funds.

The Plaintiffs attempt to remedy the lack of factual basis for the economies of scale factor by referencing Pomerantz in the SAC. (Doc. 34-1, ¶ 17). Pomerantz stated that the tasks and services remain the same no matter the size of the fund. In their response, the Plaintiffs expand upon their argument, stating that the tasks "do not become more complex or resource-intensive as the assets under management grow in size." (Doc. 42, p. 12-13). The Plaintiffs respond that the services do not contribute to the Funds' value or performance, and are performed generally for all of the State Farm Mutual funds.

Although the Plaintiffs merely cite to their expert restating the same allegation, the SAC does not fail for not meeting one of the *Gartenberg* factors. *Kasilag v. Hartford Inv. Fin. Servs., LLC*, 2012 WL 6568409, at *2 (D.N.J. Dec. 17, 2012) ("The plaintiff need not address all of the *Gartenberg* factors to survive a motion to dismiss if, when taken as a whole, the complaint demonstrates a plausible claim for relief under § 36(b)."). In *Kasilag*, the court considered the sufficiency of the § 36(b) claim as a whole, "through the lens of the *Gartenberg* factors," and determining whether the *Gartenberg* factors weighed in plaintiff's favor. *Id.* at *2, 6. The district court in *Reso* used similar reasoning in evaluating the *Gartenberg* factors. *Reso ex rel. Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*, 2011 WL 5826034, at *5 (E.D. Wis. Nov. 18, 2011) ("[S]everal other district courts have allowed complaints to survive dismissal when the alleged facts did not show each of the six *Gartenberg* factors."). Here, the Court will not dismiss because the complaint as a whole sufficiently states a claim, and the Plaintiffs adequately support the economies of scale factor in their response.

Next, the Defendant argues that the Plaintiffs failed to allege that the Funds' profitability indicates the fees are excessive. Although the Plaintiff spends little time on this factor, the facts alleged throughout the SAC, and specifically for the economies of scale factor, tip this factor into the Plaintiffs' favor. The SAC bolsters the services and economies of scale factors and sets forth facts to support an inference that the fees SFIMC collects are so large scale that there are less profits passed on to shareholders. The Plaintiffs need not plead all the facts necessary to support their claim, but need to allege facts sufficient to make the claim plausible on its face. *Iqbal*, 556 U.S. at 678.

Finally, the Defendant argues that the Plaintiffs have not supported the allegation that the Board lacked independence, conscientiousness, and adequate information. The Court found that the FAC was conjectural. The SAC adds the following: "the Board looks at the overall expense ratio of the funds. It does not separately evaluate the portion of the management fees paid to and retained by SFIMC and compare those fees to the services actually provided by SFIMC to determine whether SFIMC's fees are disproportionate to the services it renders." (Compare Doc. 35, ¶ 94 with Doc. 19, ¶ 93). The Plaintiffs do not address this allegation, which remains speculative. The Plaintiffs argue that the Defendant's exhibits, Docs. 37-7 and 37-8, demonstrate that the Board did not consider all of the relative facts or expenses in approving the fees. These arguments, however, present questions of fact and are best reserved for summary judgment.

Although the Plaintiffs do not add additional support for this factor, as discussed above, combined with the other facts as alleged, the Plaintiffs have alleged enough facts to survive the Motion to Dismiss. See *Zehrer v. Harbor Capital Advisors, Inc.*, 2014 WL 6478054, at *4 (N.D. Ill. Nov. 18, 2014) ("Although these allegations alone may not be sufficient to survive a motion to dismiss, they support Zehrer's claim that the fees are disproportionate to the services rendered

and are not the product of arm's length bargaining."). See also, *Sivolella v. AXA Equitable Life Ins. Co.*, 2016 WL 4487857, at *4 (D.N.J. Aug. 25, 2016) ("These factors are guides for the Court to follow; and not all of them need to favor Plaintiffs to impose liability.").

As stated above, the Plaintiffs' failure to provide support for one factor does not require dismissal. While this factor has not been met, the Plaintiffs have addressed the deficiencies in the FAC and dismissal is not warranted. In viewing the Complaint in the light most favorable to the Plaintiff, the Plaintiff makes a plausible claim under § 36(b) of the ICA, 15 U.S.C. § 80a-35(b). The Defendant raises the issue that the Plaintiffs are unable to support their claims that the fees were excessive. This issue may very well be an issue for summary judgment, depending upon facts uncovered during discovery. However, for purposes of the Motion to Dismiss, the Second Amended Complaint sufficiently states a plausible claim under §36(b) and gives the Defendant fair notice of the claim.

**IV. Rescission and Jury Trial**

Finally, the Defendant argues that because the Plaintiff fails to state a plausible claim under § 36(b), they are not entitled to rescission under § 47(b), nor can they ask for a jury trial when § 36(b) is an equitable claim. Also, the Defendant argues that § 47(b) is only available to a party to the contract, i.e., SFIMC and State Farm Mutual Fund Trust. The Plaintiffs did not respond.

First, Section 36(b) claims have been held to be equitable in nature, and there is no right to jury trial. See *Kamen v. Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1351 (7th Cir. 1990), *reversed on other grounds*, 500 U.S. 90 (1991). See also, *Sivolella v. AXA Equitable Funds Mgmt., LLC*, 2013 WL 4096239, at *6 (D.N.J. July 3, 2013), *R&R adopted*, 2013 WL 4402331 (D.N.J. Aug. 15, 2013) (equitable restitution is not triable to a jury). Additionally, rescission is

an equitable remedy. *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 463 (7th Cir. 2014). Thus, the demand for jury trial is stricken. If the Plaintiffs seek to amend at a later time and add legal claims which do entitle them to a trial by jury, the Court will revisit the issue.

Second, the Court will not strike the Plaintiffs' request for rescission before a violation of § 36(b) established. See *Zehrer v. Harbor Capital Advisors, Inc.*, No. 14 C 789, 2014 WL 6478054, at *4 (N.D. Ill. Nov. 18, 2014):

> [§ 36(b)] does not, however, explicitly foreclose other equitable remedies, such as injunctive relief or rescission. Because it is unsettled whether rescission under § 47(b) is an appropriate remedy if Zehrer is able to make out a violation of § 36(b), the court will not strike Zehrer's alternate request for rescission at this stage.

Although the matter is not yet settled in this Circuit, the Plaintiffs, if they prove their claim, may have rescission available as a remedy. See *Id.*; *Jacobs v. Bremner*, 378 F. Supp. 2d 861, 869 (N.D. Ill. 2005). Other courts have held that § 47(b) provides a remedy for a violation of the ICA, but that there is no separate § 47(b) claim. See *Tarlov v. Paine Webber Cashfund, Inc.*, 559 F. Supp. 429, 438 (D. Conn. 1983). See also, *Smith v. Franklin/Templeton Distributors, Inc.*, 2010 WL 2348644, at *7 (N.D. Cal. June 8, 2010) ("Courts that have considered the issue have concluded that a plaintiff can seek relief under § 47(b) only by asserting a violation of some other section of the ICA."). Therefore, the Court will reserve ruling on whether rescission under § 47(b) is an available remedy if a § 36(b) violation is established. If the matter of rescission as a remedy does come before the Court, the Court will also address the issue of standing to seek rescission at that time.

V. **Supplemental Authority**

The Defendant filed a Notice of Supplemental Authority in Support of Motion to Dismiss (Doc. 49), citing the case *Paskowitz v. Prospect Capital Management L.P.*, 2017 WL 375682 (S.D.N.Y. Jan. 24, 2017). According to the Defendant, the Court should adopt the reasoning in

*Paskowitz*, where the court dismissed the complaint because it failed to allege an adequate claim under § 36(b). *Paskowitz*, 2017 WL 375682, *5. The Court has reviewed *Paskowitz* as persuasive authority, and finds that the claims in that case are distinguishable from the case at hand. Specifically, the facts in that case focused on underperformance of the funds.

## CONCLUSION

**I.**

In the wake of *Twombly* and *Iqbal*, to survive a motion to dismiss, a plaintiff must provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008); *Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

The Court, considering the *Gartenberg* factors, finds that the SAC sets forth facts that create a plausible inference that the fees paid to SFIMC are disproportionately large in relation to the services rendered, and fall outside of the range of what arm's-length bargaining could produce. Construing the Complaint in the light most favorable to the Plaintiffs, and accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the Plaintiff's favor, the SAC states a plausible claim under § 36(b). *Hecker v. Deere & Co.*, 556 F.3d 75, 580 (7th Cir. 2009).

**II.**

For the reasons stated above, Defendant's Motion to Dismiss and Motion to Strike are DENIED. The Plaintiffs' jury demand is STRICKEN.

Signed on this __17__ day of ____April____, 2017.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge